UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____  :
                                 :
VICKI DEMBIEC, DAVID DUNCAN,     :
NICHOLAS NITTI, JOSHUA STONE,    :
and DANIELLE WILDSTEIN,          :
                                 :   Civil Action No. 20-cv-20188
                 Plaintiffs,     :
                                 :
     v.                          :   Return Date: April 5, 2021
                                 :
SCOTCH PLAINS-FANWOOD REGIONAL   :
SCHOOL DISTRICT; SCOTCH PLAINS-  :
FANWOOD BOARD OF EDUCATION; and  :
DR. JOAN MAST, in her Official   :
Capacity as Superintendent of    :
Schools,                         :
                                 :
                 Defendants.     :
_____  :
```

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
[RULE 12(b)(6)]**

---

**DOUGLAS M. SILVESTRO, ESQ.**
**The Busch Law Group LLC**
450 Main Street
Metuchen, NJ 08840
(732) 243-9588
dsilvestro@buschlawgroup.com

**DAVID B. RUBIN, ESQ.**
**David B. Rubin, P.C..**
450 Main Street
P. O. Box 4579
Metuchen, New Jersey 08840
(732) 767-0440
rubinlaw@att.net

Co-Counsel for Defendants

**David B. Rubin, Esq.**
**Douglas M. Silvestro, Esq.**
    On the Brief

## Table of Contents

**Page**

Table of Citations...............................................ii

Statement of Facts and Relevant Procedural History..................1

**Argument**

> **The Amended Complaint Fails To State A Claim Upon Which Relief May Be Granted**........................................3

Conclusion......................................................16

i

**Table of Citations**

**Page**

**Cases**

*Abbott v. Burke*, 149 N.J. 145, 166-67, 693 A.2d 417 (1997)..........13

*Abbott v. Burke*, 241 N.J. 249, 227 A.3d 850 (April 6, 2020)........13

*A.C. v. Raimondo*, 2020 WL 6042105 (D.R.I. October 13, 2020)........8,9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d
    868 (2009).......................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,
    167 L.Ed.2d 929 (2007)..........................................3

*Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 553
    (3d Cir. 2007)..................................................4

*Brach v. Newsom*, 2020 WL 6036764 at *2-3 (C.D. Cal. August 21,
    2020)..........................................................9

*Brian B. ex rel. Lois B. v. Com. of Pennslvania Dept. of Educ.*,
    230 F.3d 582, 586 (3d Cir. 2000)...............................4

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)....................14,15

*Chiropractic America. v. Lavecchia*, 180 F.3d 99, 104 (3d Cir.
    1989).........................................................14

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d
253, 261-64 (S.D.N.Y. 2019.......................................2

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440
    (1985)........................................................10

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814
    (1976)........................................................15

*C.R. v. Eugene School Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir.
    2016).........................................................6

*Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 3249062 at
    *5 (7th Cir. June 16, 2020)...................................9

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)..............10

ii

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005).................................................................6

*Gary B. v. Whitmer*, 957 F.3d 616 (6th Cir. 2020), *vacated en banc without decision*, 958 F.3d 1216 (6th Cir. 2020)...............7,8,9

*Griswold v. Connecticut*, 381 U.S. 479...............................6

*Hernandez v. Grisham*, 2020 WL 7481741 at *49-50 (D.N.M. December 18, 2020.............................................................9

*Horne v. Flores*, 557 U.S. 433, 448 (2009)..........................7

*In re Abbott*, 956 F.3d 696, 704 (5th Cir 2020).......................9

*Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11 (1905)....................................................9,10

*Landis v. Ashworth*, 57 N.J.L. 509, 512, 31 A.1017 (Sup.Ct. 1895)...13

*Lawrence v. Texas*, 539 U.S. 558 (2003)..............................5

*Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 1010 (1967)...........................................................5

*Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).........................................................5,6

*M.G. v. Crisfield*, 547 F.Supp.2d 399, 408 (D.N.J. 2008)............4

*Missouri v. Jenkins*, 515 U.S. 70, 99 (1995)........................7

*Motor Club of Am. V. Weatherford*, 841 F.Supp. 610, 623 (D.N.J. 1994)...........................................................15

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992)....................................................15

*Robinson v. Cahill*, 62 N.J. 473, 515, 303 A.2d 273 (1973).......11,13

*San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35 1973)............................................................4

*Shaffer v. Board of School Directors of Albert Gallatin Area School Dist.*, 687 F.2d 718, 720-21 (3d Cir. 1982)................4

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).......................................5

*South Bay United Pentecostal Church v. Newsom,* 140 S.Ct. 1613
(May 29, 2020) ...................................................9

*Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478, 487
(3d Cir. 1998) .................................................12

*Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp.2d 775, 793 (N.D.
Ohio) ..........................................................8

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................5,6

## <u>Other Authorities Cited</u>

28 *U.S.C.* § 1367(c) ..............................................12

*N.J. Const. of 1947*, art. VIII, § 4, para. 1 ....................12

*N.J.A.C.* 6A:8-1.3 ...............................................14

*N.J.A.C.* 6A:30 ..................................................14

*N.J.S.A.* 18A:7F-46 ..............................................14

*N.J.S.A.* 18A:7F-46(a) ...........................................13

iv

<u>**Statement of Facts and Relevant Procedural History**[1]</u>

Plaintiffs Vicki Dembiec, David Duncan, Nicholas Nitti, Joshua Stone and Danielle Wildstein commenced this action challenging the alleged refusal of defendant Scotch Plains-Fanwood Regional School District ("Scotch Plains-Fanwood" or "the District") to conduct in-person instruction five days per week for all students.  Plaintiffs subsequently filed a motion for preliminary injunction seeking an order mandating that relief. The District cross-moved for dismissal on grounds of abstention. The motions were argued on January 29, 2021, and the Court reserved decision. On February 12, 2021, plaintiffs filed an amended complaint joining their children as co-plaintiffs to address concerns about standing raised by the Court during the argument.

For reasons we will explain below, it is unnecessary to parse the factual allegations of the amended complaint in any detail. Suffice it to say, plaintiffs allege a fundamental right to five days per week of in-person instruction based on the Substantive Due Process Clause of the Fourteenth Amendment (Count One) and the New Jersey Constitution (Count Three), and that the failure to provide that amount of in-person instruction while several other school districts do is a violation of the Equal Protection Clause of the Fourteenth Amendment (Count II).

As we represented to the Court at oral argument on the parties' motions on January 29th, by then the District schools already had moved

---

[1] This recitation is drawn from the allegations in plaintiffs' amended complaint, filed February 12, 2021, and other judicially noticeable facts.

from all-remote learning to hybrid instruction with students in each school divided into two cohorts. Elementary school cohorts were attending in-person two, then three days per week on alternating weeks. Middle and High School students were attending in person two days per week.

Since then, District Superintendent, Dr. Joan Mast, announced to the school community on February 12, 2021 that she anticipated the District moving to five days a week of instruction shortly for a partial day.  *See* video announcement of Dr. Joan Mast on District website, https://tinyurl.com/37drdusu.[2]

At the next Board of Education meeting, on February 18, 2021, Dr. Mast reported to the public that the District is working toward a return to in-person instruction five days per week for Prekindergarten through fourth grade in single-session four-hour days beginning March 15, 2021. Beginning March 3, 2021, the Middle and High School students will attend in-person on alternating Wednesdays, which are currently virtual-only for students at these grade levels. This will result in students at the Middle and High School levels attending school in-person for a total of five single-session days every two weeks.

---

[2] Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take judicial notice of a fact on its own and must take judicial notice of a fact if a party requests it and the court is supplied with the necessary information. *Fed. R. Evid.* 201(c). Official statements of government officials posted on their independently-verifiable Internet sites qualify for judicial notice. *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 261-64 (S.D.N.Y. 2019).

The District is still working on alternatives that would allow for increased in-person instruction and expects to have additional steps ready to be finalized as of March 30, 2021. The District also is planning on a likely return to full-day, in-person instruction in September 2021. *See* video of February 18, 2021 Board meeting, https://tinyurl.com/jeetdyc9, opening statement of Dr. Mast at 2:30.

### Argument

### The Amended Complaint Fails To State A Claim Upon Which Relief May Be Granted.

#### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure (12)(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

3

B. **Plaintiffs Have Failed To State A Claim**

For the following reasons, and accepting plaintiffs' factual allegations as true, the amended complaint fails to state a claim upon which relief may be granted because the federal rights plaintiffs assert in this case simply do not exist, and there is sound reason to decline supplemental jurisdiction over plaintiffs' state law claim.

1. Substantive Due Process

The claims asserted in Count One of the amended complaint all emanate from a supposed fundamental federal right to "a basic minimum education." (Amended Complaint, ¶ 62) Those claims are foreclosed by Supreme Court and Third Circuit precedent. The Supreme Court, in *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35 1973), held that there is no fundamental constitutional right to a public education. The Third Circuit has so interpreted *Rodriguez* in numerous decisions, *see, e.g., Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007)(holding "there is no fundamental right to public education," citing *Rodriguez*),[3] and the Judges of our District Court have uniformly reached the same conclusion. *See, e.g.,* now-Chief Judge Wolfson's observation in *M.G. v. Crisfield*, 547 F.Supp.2d 399, 408 (D.N.J. 2008), that "there is no fundamental right to education protected under the federal constitution."

---

[3] *See also Brian B. ex rel. Lois B. v. Com. of Pennslvania Dept. of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000); *Philadelphia Police and Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 165 (3d Cir. 1989); *Shaffer v. Board of School Directors of Albert Gallatin Area School Dist.*, 687 F.2d 718, 720-21 (3d Cir. 1982).

Plaintiffs explained their substantive due process claim in the "likelihood of success" portion of their preliminary injunction brief but failed to mention *Rodriguez*, much less distinguish it. Instead, they relied entirely on two irrelevant decisions. The first was *Washington v. Glucksberg*, 521 U.S. 702 (1997). *Glucksberg* involved the constitutionality of a statute banning assisted suicide and had nothing to do with the right to a public education. The closest the Court came to any mention of education at all was in a passage listing examples of some "liberty" interests protected by the Due Process Clause:

> In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 1010 (1967); to have children, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *to direct the education and upbringing of one's children, Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

521 U.S. at 720 (emphasis added).

*Glucksberg* does outline the analytical framework for substantive due process claims generally. But even if public education as a fundamental right were an open question in this Circuit (which there isn't), *Glucksberg* would require plaintiffs to establish that it is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." 521 U.S. at 720-21. Plaintiffs also would be required to provide a "careful description of the asserted fundamental interest." *Id*. Plaintiffs have not done so, and history is not on their side. *See, e.g.,* Robert N. Gross, *Public v.*

*Private: The Early History of Social Choice in America*, at 2 (2018)(explaining that public education did not become common in the United States until the mid-19[th] century).

Another reason for rejecting public education as a fundamental constitutional right is that substantive due process rights generally protect individuals from overly intrusive government action. *See, e.g., Lawrence v. Texas*, 539 U.S. 558 (2003)(same-sex sexual relations); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992)(abortion); *Griswold v. Connecticut*, 381 U.S. 479 (contraception). Substantive due process "refers to certain actions that the government may not engage in" and "[g]enerally speaking . . . protects an individual's fundamental rights to liberty and bodily autonomy." *C.R. v. Eugene School Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016)(citations and quotation marks omitted).

As the Supreme Court observed in *Glucksberg*, those liberties undoubtedly include parents' right to choose a public or private education for their children. *See Meyer, supra; Pierce, supra.* But "once parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the last, substantially diminished." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005). By contrast to rights against government interference, plaintiffs' substantive due process claim here would impose an affirmative obligation on the government to educate their children – and to educate them in a particular way.

6

This cuts against the grain of well-established precedents holding that the manner of providing public education is "generally committed to the control of state and local authorities." *Id.* Plaintiffs' proposed constitutional right would unsettle "local autonomy" over public education, which the Supreme Court has recognized as "a vital national tradition." *Missouri v. Jenkins*, 515 U.S. 70, 99 (1995)(citation omitted). *See also Horne v. Flores*, 557 U.S. 433, 448 (2009).

The other case plaintiffs relied on for their purported fundamental right was the majority opinion of a split Sixth Circuit panel in *Gary B. v. Whitmer*, 957 F.3d 616 (6th Cir. 2020), *vacated en banc without decision*, 958 F.3d 1216 (6th Cir. 2020), the first and only federal appellate decision to find even *some* substantive due process entitlement to a public education. *Gary B.* is of no help to plaintiffs, for several reasons. To begin with, it isn't even precedential in the Sixth Circuit because it was vacated by the *en banc* court. Even if it were controlling there, the panel was not addressing remote instruction but the deprivation of students' opportunity to achieve a minimal level of literacy. More importantly, the New Jersey District Court is bound by the Third Circuit's understanding of *Rodriguez* which flatly rejects education as a fundamental education right.

Even if there were no binding Third Circuit precedent and this Court were free to adopt the reasoning of *Gary B.* (which it isn't), that case is distinguishable from what's presented here. The plaintiffs in *Gary B.* alleged that "the conditions in their schools

are so bad – due to the absence of qualified teachers, crumbling facilities, and insufficient materials – that those schools fail to provide access to literacy." 957 F.3d at 624. No such claim can be made here as instruction has been provided with competent teachers and an up-to-date, challenging curriculum, albeit through the unconventional remote format.

Even assuming for argument's sake some minimal amount of public education is a fundamental constitutional right, plaintiffs have alleged no facts supporting a plausible inference that a temporary period of remote instruction violates that right, and there is authority to the contrary. *See, e.g., Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp.2d 775, 793 (N.D. Ohio)(online instruction rather than in-person instruction not necessarily a violation of a child's right to an education).

Similar reasoning motivated a Rhode Island federal court, in *A.C. v. Raimondo*, 2020 WL 6042105 (D.R.I. October 13, 2020), to reject a claim of a fundamental constitutional right to civics education, distinguishing *Gary B.* thusly:

> {T]here is a difference. The examples cited by the court in *Gary B.* to illustrate why literacy is imperative for citizen participation in a functioning democracy — voting, taxes, jury duty, even reading road signs — are all indeed "inaccessible without a basic level of literacy" — but they are not wholly inaccessible without civics education. *See* 957 F.3d at 652-53; see also *id.* at 649 recognizing "every meaningful interaction between a citizen and the state is predicated on a minimum level of literacy, meaning that access to literacy is necessary to access our political process"). So, while it is clearly desirable — and even essential . . . for citizens to have a deeper grasp of our civic responsibilities and governing mechanisms and American history, this is not something the U.S. Constitution contemplates or mandates.

*A.C.*, *supra*, at *17. So too, here, plaintiffs have alleged no facts supporting an inference that anything less than five days per week of in-person instruction is incapable of equipping students with the "minimum level of literacy" at issue in *Gary B.*

We note in passing the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11 (1905), the seminal case routinely looked to by federal courts analyzing government curtailment of constitutional freedoms during a public health crisis, including the COVID-19 pandemic. *See, e.g., South Bay United Pentecostal Church v. Newsom,* 140 S.Ct. 1613 (May 29, 2020)(Roberts, C.J., concurring in denial of application for injunctive relief); *Brach v. Newsom*, 2020 WL 6036764 at *2-3 (C.D. Cal. August 21, 2020); *Hernandez v. Grisham*, 2020 WL 7481741 at *49-50 (D.N.M. December 18, 2020; *In re Abbott*, 956 F.3d 696, 704 (5th Cir 2020); *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 3249062 at *5 (7th Cir. June 16, 2020).

*Jacobson*, and decisions relying on it over the years, recognize government officials' authority to restrict the exercise of federal rights in the face of a *bona fide* health crisis, and the deference to be accorded their decisions about what measures are reasonably necessary to protect the public. As Chief Justice Roberts put it in *South Bay*, the Constitution "principally entrusts the safety and the health of the people to the politically accountable officials of the States." 140 S.Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief).

Of course, *Jacobson* does not come into play absent some federal right arguably being infringed.  Plaintiffs have failed to identify

9

any such right. We also acknowledge that applying *Jacobson* here may entail consideration of facts beyond the pleadings.

    2. Equal Protection

In Count Two of the amended complaint, plaintiffs allege that anything less than five days per week of in-person instruction violates students' rights under the Equal Protection Clause because students in nearby school districts are receiving "regular and consistent in-class instruction of five partial days (or five full days) per week since September 2020[.]" Pl. Brf.at 18-19. For the following reasons, plaintiff's Equal Protection claim is meritless on its face.

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Classifications that do not implicate fundamental rights or a suspect class are permissible so long as they are rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Under rational basis review, a classification is valid "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

We have shown that there is no federal constitutional right to a public education, much less an in-person one. Nor does the amended

complaint allege that defendants discriminated against its own students based on a suspect classification. Nevertheless, plaintiffs contend that Equal Protection requires defendants to provide an educational experience on par with other school districts. Plaintiffs cited no authority for this proposition in their preliminary injunction brief, which is hardly surprising as there is none. And the underlying premise – that Equal Protection entitles citizens of one community to the same level of public services as citizens in the town next door – has been rejected by the courts.

In *Robinson v. Cahill*, 62 N.J. 473, 303 A.2d 273 (1973), the New Jersey Supreme Court considered whether the disparate quality of education from one district to another gave rise to an Equal Protection violation under the Federal and State Constitutions. In rejecting that claim, Chief Justice Weintraub explained,

> [i]t must be evident that the rudimentary scheme of local government is implicated by the proposition that the equal protection clause dictates statewide uniformity. . . . This is so unless it can be said that the equal protection clause holds education to be a thing apart from other essential services which also depend upon local legislative decision with respect to the dollar amount to be invested.

*Robinson*, 62 N.J. at 482. "The equal protection proposition potentially implicates the basic tenet of local government that there be local authority with concomitant fiscal responsibility." *Id*. at 500.

Local governments provide all manner of public services including police protection, recreational programs, garbage collection and other functions. Some of these activities are subsidized by the state or federal government, some aren't. In large part, the level of those

services reflect what citizens and taxpayers in those localities are prepared to support. The same holds true for education, subject to all school districts' obligation to provide the "thorough and efficient" education required by the State Constitution. If plaintiffs' theory held water, citizens who live in a town where potholes abound would have a viable Equal Protection claim if roads in the town next door are impeccably maintained. That simply is not the law.

    3. <u>State Constitution</u>

Plaintiffs allege that five days per week of in-person instruction is also guaranteed by the New Jersey Constitution. For the following reasons, the Court should decline supplemental jurisdiction of this state law claim.

Under 28 *U.S.C.* § 1367(c), the Court has discretion to decline supplemental jurisdiction in four specific circumstances: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominated over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478, 487 (3d Cir. 1998).

The New Jersey Constitution entitles all school-age children to a "thorough and efficient" free public education. *See N.J. Const. of 1947*, art. VIII, § 4, para. 1 ("The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State

between the ages of five and eighteen years."). What constitutes a "thorough and efficient" education for students attending New Jersey' nearly 600 separate school districts has been the focus of nearly 50 years of litigation before the New Jersey Supreme Court starting with *Robinson v. Cahill*, *supra*, and continuing through more than 20 decisions in *Abbott v. Burke. See*, most recently, *Abbott v. Burke*, 241 N.J. 249, 227 A.3d 850 (April 6, 2020).

Along the way, the New Jersey Supreme Court staked out the parameters of a minimally sufficient public education under the "thorough and efficient" clause:

> At its core, a constitutionally adequate education has been defined as an education that will prepare public school children for a meaningful role in society, one that will enable them to compete effectively in the economy and to contribute and to participate as citizens and members of their communities. *See* [*Abbott v. Burke*, 100 N.J. 269, 280-81 495 A.2d 376 (1985)] noting that the Constitution requires "that educational opportunity which is needed in the contemporary setting to equip a child for his role as a citizen and as a competitor in the labor market" (citing [*Robinson v. Cahill*, 62 N.J. 473, 515, 303 A.2d 273 (1973)]; *Landis v. Ashworth*, 57 N.J.L. 509, 512, 31 A.1017 (Sup.Ct. 1895)(stating that a constitutionally adequate education must be "capable of affording to every child such instruction as is necessary to fit it for the ordinary duties of citizenship").

*Abbott v. Burke*, 149 N.J. 145, 166-67, 693 A.2d 417 (1997). In furtherance of that mandate, the Legislature and the Department have spent decades defining and redefining the specific components of a "thorough and efficient" education.

New Jersey education law, in its present form, requires the Commissioner of Education to "develop and establish . . . efficiency standards which define the types of programs, services, activities, and materials necessary to achieve a thorough and efficient

13

education." *N.J.S.A.* 18A:7F-46(a). The State Board of Education has, in turn, approved "New Jersey Student Learning Standards," defined as

> standards adopted by the State Board of Education on May 1, 1996, and as thereafter revised by the State Board, and the Common Core State Standards adopted by the State Board on June 16, 2010, and as thereafter revised by the State Board, that describe the knowledge and skills all New Jersey students are expected to acquire by benchmark grades in the following areas: English language arts; 9 mathematics; science; social studies; visual and performing arts; comprehensive health and physical education; world languages; technology; and 21st career life and careers. *The standards are established for the provision of a thorough and efficient education pursuant to N.J.S.A. 18A:7F-46* and as a basis for the evaluation of school districts in accordance with N.J.A.C. 6A:30.

*N.J.A.C.* 6A:8-1.3 (emphasis added).

Clearly, New Jersey has a paramount interest in determining for itself the components of a baseline education for its school-age children, and exhaustive efforts have been devoted to a definition sufficient to withstand constitutional scrutiny.  There is nothing in the current standards to suggest that some period of remote instruction would deprive students of a "thorough and efficient" education.

We have already presented our arguments to the Court in support of *Burford* and *Pullman* abstention which coincidentally touch on the factors for declining supplemental jurisdiction enumerated above.  As we have previously argued, *Burford* abstention is appropriate to give a state court the opportunity to determine important questions of state law which may avoid the need to address a federal constitutional issue. *Chiropractic America. v. Lavecchia*, 180 F.3d 99, 104 (3d Cir. 1989)(citing *Burford*, 319 U.S. at 333, n. 29). *See Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).

14

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)(quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976)).

> The *Burford* abstention doctrine applies where a case involves both difficult, complex questions of state law and administration of a state law by a scheme of state administrative agencies. When this is the case, involvement by the federal courts may cause confusion, and disrupt the state's efforts to establish a coherent, uniform policy to solve a complex local problem. The danger which *Burford* abstention avoids is the prospect of a case being decided differently depending on whether it was heard by state officials and judges or by federal judges. In such a situation, a federal court could potentially undermine the state's administrative process.

*F.D.I. v. Sweeney*, 136 F.2d 216, 219 (1st Cir. 1998). *See also Motor Club of Am. V. Weatherford*, 841 F.Supp. 610, 623 (D.N.J. 1994). Those same considerations weigh in favor of declining supplemental jurisdiction.

The New Jersey courts have not specifically addressed whether remote instruction infringes students' constitutional right to a minimally sufficient education.  Instead of exhausting a readily available state-level administrative remedy with judicial review, *see N.J.S.A.* 18A:6-9, or asserting their claim in the Superior Court, plaintiffs instead ask a federal court to find that the New Jersey Constitution requires nothing less than five days per week of in-person learning. Plaintiffs can cite no legal authority for this

15

position so, by necessity, this Court would need to make new law to decide the case in their favor. It is not the role of the federal courts to define what a "thorough and efficient" education is for New Jersey public school students. That is the purview of the New Jersey Legislature and State educational officials, with the New Jersey Supreme Court as the ultimate arbiter.

For these reasons, the Court should decline supplemental jurisdiction.

<u>**Conclusion**</u>

Plaintiffs have failed to state a claim upon which relief may be granted. The amended complaint should be dismissed with prejudice and with costs.

Respectfully submitted,

**DAVID B. RUBIN, P.C.**
Co-Counsel for Defendants

By: /s/David B. Rubin

Dated: February 19, 2021

16